1

2

3

4

5

6

7

8

9                        IN THE UNITED STATES DISTRICT COURT

10                    FOR THE EASTERN DISTRICT OF CALIFORNIA

11   PHILIP R. MELENDEZ,

12               Petitioner,                    No. CIV S-03-1593 GEB KJM P

13         vs.

14   A.K. SCRIBNER, Warden, et al.,

15               Respondents.               <u>FINDINGS AND RECOMMENDATIONS</u>

16   _____/

17               Petitioner is a state prison inmate proceeding pro se with a petition for a writ of

18   habeas corpus, challenging his Sacramento County convictions of two counts of second degree

19   murder, one count of assault with a deadly weapon, and a finding that he had used a gun and the

20   resulting sentence of forty-one-years-to-life.

21   I.  <u>Background</u>

22               The Court of Appeal's factual summary reflects this court's reading of the record

23   as it was developed at trial:

24               At approximately 3:00 p.m. on October 24, 1997, defendant's
                 biological father, Pete DePedro, got into a fight with a man over a
25               drug deal that had gone bad.  The fight ended when a woman
                 intervened and stabbed DePedro.  Defendant was informed of the
26               incident and visited his father at the hospital that evening.  While

there, defendant was informed by another relative that a man named Gabriel had been the cause of the fight.  Defendant was also told that Gabriel usually hung out in apartment No. one at 683 El Camino Avenue in Sacramento.

Laurinda (Marla) Cousins lived in apartment No. one at 683 El Camino Avenue with her two sons and her boyfriend, Frank Contreras.  Cousins returned home from work in the early morning hours of October 25 and, between 2:15 and 2:30 a.m., several people arrived at the apartment for a party.

Meanwhile, defendant went to see his friend, Emilio Lobato, who gave defendant a handgun and a ride to 683 El Camino Avenue.  Inside apartment No. one, Gary Cummings and Martin Presz were sitting in the living room.  Cousins, Contreras, and several women were in the master bedroom and another guest, Paul Velasquez, was in the bathroom.  Defendant broke open the front door to the apartment and entered.  He began waiving [sic.] the handgun around and asking for Gabriel.  Defendant grabbed Cummings by the hair and put his gun to the back of his head, threatening to "blow his brains out."  Defendant forced Cummings over to a couch to sit with Presz.

After the door was broken open, Velasquez came out of the bathroom and told the people in the bedroom that somebody was in the house with a gun.  Cousins told Contreras to get the shotgun he kept in the bedroom.  Defendant said several times, "Where's Gabriel?  Get him out here."  Cousins yelled that Gabriel did not live there, and defendant said "Who's that bitch?  Send her out here."

Cousins walked into the living room and told defendant Gabriel did not live there.  Defendant hit her on the head with his fist and said, "You think I'm fucking joking?" and "I'm going to cap somebody."  Defendant hit Cousins on the head with the gun.  Defendant asked Cousins, "Are you the bitch who stabbed my father?"  Cousins kept telling defendant Gabriel did not live there, but defendant hit her again with the gun.  At that point, Cummings began to rise from the couch, and defendant shot him in the head.  Contreras then appeared with the shotgun and he and defendant engaged in a gun battle, defendant shooting from behind a couch.  Contreras received wounds to the arm and chest.

Defendant eventually fled the scene and returned the gun to Lobato.  He was arrested at approximately 9:00 a.m. that morning at Lobato's residence.  Both Cummings and Contreras died from the wounds inflicted by defendant.

Defendant testified on his own behalf, explaining that he had gone to the apartment to investigate the knifing of his father.  He did not intend to shoot anyone but, at Lobato's suggestion, had brought the

2

gun along for protection.  He denied breaking open the door.
According to defendant, the door was already broken when he
arrived and he was invited in by the people in the living room.
Defendant also denied pointing the gun at Cummings.  Defendant
testified he got into an argument with Cousins and accidentally hit
her.  He further testified he tried to leave, but Contreras opened fire
on him, at which point he fired back in self-defense.  Defendant
presented other testimony corroborating his version that the
shotgun had been fired first.  Several other witnesses attested to
defendant's good character.

Answer, Ex. C at 2-4.

II.  Standards Under The AEDPA

An application for a writ of habeas corpus by a person in custody under a

judgment of a state court can be granted only for violations of the Constitution or laws of the

United States.  28 U.S.C. § 2254(a).  Federal habeas corpus relief also is not available for any

claim decided on the merits in state court proceedings unless the state court's adjudication of the

claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").  See Ramirez v. Castro,

365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief

under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth

Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538

U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did

not address the merits of petitioner's Eighth Amendment claim).[1]  Courts are not required to

---

[1]  In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals
held in a § 2254 action that "any independent opinions we offer on the merits of constitutional
claims will have no determinative effect in the case before us . . . At best, it is constitutional
dicta."  However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain

1    address the merits of a particular claim, but may simply deny a habeas application on the ground

2    that relief is precluded by 28 U.S.C. § 2254(d).  Lockyer, 538 U.S. at 71 (overruling Van Tran v.

3    Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district

4    courts to review state court decisions for error before determining whether relief is precluded by

5    § 2254(d)).  It is the habeas petitioner's burden to show he is not precluded from obtaining relief

6    by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

7            The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are

8    different.  As the Supreme Court has explained:

9            A federal habeas court may issue the writ under the "contrary to"
             clause if the state court applies a rule different from the governing
10           law set forth in our cases, or if it decides a case differently than we
             have done on a set of materially indistinguishable facts.  The court
11           may grant relief under the "unreasonable application" clause if the
             state court correctly identifies the governing legal principle from
12           our decisions but unreasonably applies it to the facts of the
             particular case.  The focus of the latter inquiry is on whether the
13           state court's application of clearly established federal law is
             objectively unreasonable, and we stressed in Williams [v. Taylor,
14           529 U.S. 362 (2000)] that an unreasonable application is different
             from an incorrect one.

15

16   Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the

17   law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply

18   fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8

19   (2002).

20           The court will look to the last reasoned state court decision in determining

21   whether the law applied to a particular claim by the state courts was contrary to the law set forth

22   in the cases of the United States Supreme Court or whether an unreasonable application of such

23   law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S.

24

25   relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees.  Title
     28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation

26   of the Constitution before he or she may obtain habeas relief.  See Lockyer, 538 U.S. at 70-71;
     Ramirez, 365 F.3d at 773-75.

919 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial

of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court

must perform an independent review of the record to ascertain whether the state court decision

was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other

words, the court assumes the state court applied the correct law, and analyzes whether the

decision of the state court was based on an objectively unreasonable application of that law.

It is appropriate to look to lower federal court decisions to determine what law has

been "clearly established" by the Supreme Court and the reasonableness of a particular

application of that law.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

III.  Improper Jury Instructions And Responses To Jury Questions

Petitioner argues that the instructions on a homeowner's right to defend his home

and on the principle that one who is attacked has no duty to retreat and may still rely on self-

defense improperly turned the jury's focus to Contreras's, rather than petitioner's, state of mind.

Moreover, he argues that the trial court's answer to the jury's question about provocation was

improper and thus violated his Sixth Amendment right to have the court address the jury's

concerns.

A.  Background

Petitioner argues that he was not guilty of murder because he acted in self-defense

as he was lawfully in the apartment and was attacked by its residents, or that he was guilty of

manslaughter on a heat of passion/sudden quarrel theory, because he acted in response to

aggression by Cousins and Contreras.  RT 573, 581-582.

The jury was instructed that a person is justified in committing a homicide when

he is resisting an attempt to commit "a forcible and atrocious crime" or when he is acting in self-

defense or in the defense of others.  RT 616-617; CT 268-270.  The jury also was instructed that

killing is lawful if it is justifiable and that the burden is on the prosecution to prove beyond a

reasonable doubt that the homicide was not justifiable.  RT 617; CT 271.  Other instructions

1 explained the theory of "imperfect self-defense," the actual but unreasonable belief in the

2 necessity to defend oneself, and the propriety of using force to defend oneself from assault.  RT

3 618-619; CT 273.  The court also instructed the jury with CALJIC No. 5.42:

> A person may defend his or her home or dwelling against anyone
> who manifestly intends or endeavors, in a violent or riotous
> manner, to enter that home or dwelling and who appears to intend
> violence to any person in that home or dwelling.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> He or she is not bound to retreat even though a retreat might safely
> be made.  He or she may resist force with force, increasing it in
> proportion to the intruder's persistence and violence and if the
> circumstances which are apparent to the lawful occupant of the
> property are such as would excite similar fears and a similar belief
> in a reasonable person.

11 RT 619; CT 275.  The court then told the jury that a person who is justified in acting in self-

12 defense similarly has no duty to retreat, but may stand his ground and even pursue his assailant

13 until he is safe.  RT 620; CT 276.  Finally, the jury was told that the right to use self-defense

14 ceases when the real or apparent danger ceases and that a person who has initiated an assault may

15 rely on self-defense only if he has made clear his intention to stop fighting and has in fact done

16 so.  RT 621; CT 278-279.

17         In addition, the jury heard definitions of the sort of sudden quarrel or heat of

18 passion that would reduce a murder to manslaughter and an explanation that provocation

19 insufficient to raise passion would not reduce the crime to manslaughter but might have bearing

20 on whether the defendant killed without premeditation or deliberation.  RT 626-629, 631; CT

21 289-292.  The court informed the jury that the prosecutor bore the burden of showing that the

22 killing was not done in the heat of passion or upon a sudden quarrel.  RT 630; CT 294.

23         During deliberations, the jury asked, "Can a lawful act be considered

24 'provocation' in the legal sense?"  CT 232.  The court replied:

25 /////

26 /////

1    
> Provocation insufficient to reduce murder to manslaughter whether
2    lawful or unlawful, is a circumstance which you may consider in
     determining whether or not deliberation and premeditation was
3    present during the killing.

4    CT 233.

5           The jury ultimately convicted petitioner of two counts of second degree murder.

6    CT 324-325.

7           On appeal, petitioner challenged the jury instructions about the defense of the

8    home and the court's answer to the jury's question about provocation.  The Court of Appeal

9    rejected the claims:

10          
> In this instance, the trial court's response to the jury's question
11   adequately addressed the issue raised, namely, whether a *lawful* act
     may be considered provocation within the meaning of the court's
12   instruction.  The original instruction did not so state, whereas the
     court's answer explained that either a lawful or an unlawful act
13   may suffice.  No further explanation was required.

14   Defendant's argument that the jury's question was prompted by
     two other instructions that should not have been given is without
15   merit.  As indicated previously, the jury's question specifically
     referred to the instruction on the effect of provocation on
16   premeditation and deliberation.  The jury was told even a lawful
     act could be considered in assessing whether defendant
17   premeditated and deliberated.  The jury returned a guilty verdict to
     second degree murder, concluding there had been no premeditation
18   and deliberation.

19   The instructions on defense of a home and the right not to retreat
     were proper statements of the law.  They were appropriate on the
20   facts of this case, in particular, that Contreras fired at defendant
     either before or after defendant shot Cummings.  In order to assess
21   the legality of defendant's conduct vis-á-vis Contreras properly, it
     was necessary for the jury to be informed of Contreras's right to
22   use force.  Furthermore, the instruction on the right not to retreat
     applied equally to defendant, who claimed that he had been invited
23   into the apartment, that Contreras opened fire on him and that
     defendant fired back in self-defense.

24   Defendant's argument that the instructions improperly focused on
     the state of mind of Contreras is not well taken.  The instructions
25   explained that, under certain circumstances, Contreras had a right
     to use force.  However, they did not say the reasonableness of
26   Contreras's conduct was to be determined based on the

7

circumstances as perceived by Contreras.  Rather, the instructions
focused on defendant's state of mind at the time of the shooting.
The instructions explained that on the murder counts "there must
exist a union or joint operation of act or conduct and a certain
mental state *in the mind of the perpetrator*."  (Italics added.)  The
basic self-defense instruction concentrated on the state of mind of
the "person who does the killing."  The prosecutor himself
explained: "You're going to be told that the law focuses
completely on what the defendant was thinking.  What was he
intending?"  Later, the prosecution again explained that, in
assessing a self-defense claim, the law focuses on what a
reasonable person in the defendant's position would think.  There
was no instructional error.

Answer, Ex. C at 6-8.

B. CALJIC No. 5.42

A challenge to jury instructions does not generally state a federal constitutional

claim.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456

U.S. 107, 119 (1982)).  In order to warrant federal habeas relief, a challenged jury instruction

cannot be merely "undesirable, erroneous, or even universally condemned, but must violate some

due process right guaranteed by the fourteenth amendment."  Cupp v. Naughten, 414 U.S. 141,

146 (1973).  In making this determination, a single instruction "may not be judged in artificial

isolation, but must be viewed in the context of the overall charge."  Boyde v. California, 494 U.S.

370, 378 (1990).

Petitioner suggests that the giving of instruction 5.42 improperly focused the

jury's attention on the state of mind of the victim whereas under state law, the focus must be on

the defendant's state of mind.  Pet. at 1.  To the extent petitioner is arguing that the instruction

violated state law, he has not presented a claim cognizable on federal habeas review.  Estelle v.

McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that federal habeas corpus

relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a

federal habeas court to reexamine state-court determinations on state-law questions." (citations

and internal quotation marks omitted)).

/////

1    Petitioner also argues that this instruction denied him the right to present a

2 defense.  In California v. Trombetta, 467 U.S. 479, 485 (1984), the Supreme Court held

3 explicitly that due process requires "criminal defendants be afforded a meaningful opportunity to

4 present a complete defense."  Several Courts of Appeals have interpreted this to encompass a

5 defendant's right to jury instructions on recognized defenses supported by sufficient evidence.

6 Taylor v. Withrow, 288 F.3d 846, 853 (6th Cir.), cert. denied, 537 U.S. 1007 (2002); Bradley v.

7 Duncan, 315 F.3d 1091, 1098-99 (9th Cir. 2002), cert. denied, 540 U.S. 963 (2003).  These

8 courts have relied on the fact that the same rule is recognized in federal criminal procedure.

9 Matthews v. United States, 485 U.S. 58, 63 (1988).

10    In this case, as noted above, the jury received extensive instructions on self-

11 defense, imperfect self-defense, provocation and heat of passion; petitioner does not claim that

12 any instruction to which he was entitled was omitted.  Indeed, his theory was presented

13 completely to the jury in the instructions given.  Moreover, it appears that giving CALJIC No.

14 5.42 when the confrontation underlying the changed crime has occurred in the victim's home is

15 proper under state law.  See People v. Gleghorn, 193 Cal.App.3d 196, 203 (1987).

16    The state Court of Appeal did not apply clearly established federal law

17 unreasonably in determining that CALJIC No. 5.42 did not undercut petitioner's right to have the

18 jury properly instructed on his defense.

19    C.  Answer To The Jury's Question

20    Petitioner argues that the trial court failed in providing an answer that did not

21 fulfill its duty to provide "additional guidance" because it simply directed the jury to "the

22 essence" of the instructions on provocation.  Petitioner does not challenge the instructions on

23 provocation given during the initial charge to the jury or the answer to the jury's question to the

24 extent an answer was given.[2]

25

26    [2]  In the state court briefing, appellate counsel suggested that the answer was incorrect to
the extent that it was based on CALJIC No. 5.42, which, in her view, improperly turned the

1    In Weeks v. Angelone, 528 U.S. 225, 234 (2000), the Supreme Court held that

2   when a jury is adequately instructed, the Constitution does not require a judge to do anything

3   more to respond to a jury's question beyond "directing its attention to the precise paragraph of

4   the constitutionally adequate instruction that answers its inquiry."  In this case, the trial court did

5   more than that: while it did indeed repeat the essence of the instruction on provocation, it

6   answered the jury's specific inquiry about the relationship between the victim's lawful act and

7   provocation.  In upholding this action, the Court of Appeal did not apply federal law in an

8   unreasonable fashion.  Johnson v. Luebbers, 288 F.3d 1048, 1052-53 (8th Cir. 2002).

9   IV.  Restrictions On Defense Evidence

10    Petitioner also argues that the court prevented him from introducing evidence in

11   support of his defense on three occasions, in violation of his constitutional right to present a

12   defense.

13    In general, a state court's evidentiary ruling is not subject to federal habeas review

14   unless the ruling violates federal law, either by infringing upon a specific federal constitutional or

15   statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by

16   due process.  See Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d

17   918, 919-20 (9th Cir. 1991).

18    The Supreme Court has explored a criminal defendant's right to present a defense

19   in a cluster of cases.  In Washington v. Texas, 388 U.S. 14 (1967), the Supreme Court struck

20   down a Texas statute that forbade a defendant from calling a co-perpetrator as a witness because

21   that statute "arbitrarily denied him the right to put on the stand a witness who was physically and

22   mentally capable of testifying to events that he had personally observed, and whose testimony

23   would have been relevant and material to the defense."  Id. at 22.

24

25   jury's focus away from petitioner's state of mind.  In view of this court's conclusion that the
    challenge to the instruction is unavailing, its use to bolster this claim of error is similarly
26   unavailing.

In <u>Chambers v. Mississippi</u>, 410 U.S. 284 (1973), the Court reversed Chambers' conviction because the trial court excluded as hearsay testimony from several witnesses prepared to testify that a man named McDonald had confessed to the murder with which Chambers was charged.  The court observed that a state cannot apply rules of evidence in a rigid, mechanical fashion to exclude reliable, trustworthy evidence crucial to the defense.  <u>Id</u>. at 302

In <u>Rock v. Arkansas</u>, 483 U.S. 44 (1987), the Court considered a ruling permitting the defendant to testify about killing her husband, but not to describe what she had remembered during hypnosis.  Relying on <u>Washington</u> and <u>Chambers</u>, the Court ruled that the state could not apply a rule of evidence that "arbitrarily excludes material portions" of a witness's testimony.  It noted, however:

> Of course, the right to present relevant testimony is not without limitation.  The right "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."

<u>Id</u>. at 55-56.

In <u>United States v. Scheffer</u>, 523 U.S. 303 (1998), the Court considered Military Rule of Evidence 707, which made polygraph evidence inadmissible in court-martial proceedings.  As it had in <u>Rock</u>, the Court examined the accommodation between a defendant's right to present a defense and the government's interests in ensuring that reliable evidence is presented and avoiding litigation collateral to the purpose of the trial.  <u>Id</u>. at 308-09.  The Court observed that rules excluding evidence "do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve."  <u>Id</u>. (internal quotations omitted).  The Court found the situation before it different than those in <u>Washington</u>, <u>Chambers</u>, and <u>Rock</u>, because "respondent was barred merely from introducing expert opinion testimony to bolster his own credibility," but was able to present factual evidence without restriction.  <u>Id</u>. at 317.

/////

The Court's most recent examination of a defendant's right to present a defense is found in Holmes v. South Carolina, ___ U.S. ___, 126 S.Ct. 1727 (2006).  In that case, the South Carolina court had excluded evidence that another person had committed the murder with which Holmes was charged because the strength of the prosecution's forensic evidence meant, in its view, that the proffered third party culpability evidence did not raise a reasonable inference as to Holmes' innocence.  The Court acknowledged that

> well established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> [T]he constitution permits judges to exclude evidence that is repetitive . . . only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues.

Id. at 1732.  It found, however, that "no logical conclusion can be reached" regarding the strength of the defense evidence if a court evaluates only the prosecution's evidence in determining the admissibility of defense evidence.  Id. at 1734; see also Chia v. Cambra, 360 F.3d 997, 1003 (9th Cir. 2004), cert. denied sub nom. Lewis v. Michael Su Chia, 544 U.S. 919 (2005) (court must balance importance of excluded evidence against state's interest in exclusion; court erred in excluding co-conspirator's statements exculpating petitioner; Wood v. State of Alaska, 957 F.2d 1544, 1551 (9th Cir. 1992) ("[e]ven though the evidence is relevant, it may properly be excluded if its probative value is outweighed by other legitimate interests).

A.  Anthony Cousins

Cousins's son Anthony confirmed that Gabriel Ortiz was a friend of his who often visited the Cousins-Contreras apartment, sometimes "two or three or five times in any given day."  RT 215.  When counsel asked if Anthony was aware whether Gabriel had "ever run drugs for anybody," the prosecutor's relevance objection was sustained.  Id.  Later, the court

/////

1   explained that petitioner had not laid a sufficient foundation for the court to determine the

2   relevance of the evidence or "to avoid 352[3] problems."  RT 290-291.

3   　　　　　The Court of Appeal said:

4   　　　　Defendant contends that evidence Gabriel was involved in running
　　　　drugs would have helped to explain why he took a gun to the

5   　　　　apartment complex.  However, even if the evidence were relevant
　　　　to the point defendant suggests, this does not get around Evidence

6   　　　　Code section 352. . . . The fact Gabriel may have been running
　　　　drugs had only slight probative value on the issue whether the

7   　　　　neighborhood was dangerous.  The proffered evidence did not
　　　　indicate whether Gabriel was running drugs *in that area* or whether

8   　　　　other drug activities were present.  Furthermore, other evidence
　　　　was presented that at least some of the guests in apartment No. one

9   　　　　had recently consumed drugs and one witness testified the
　　　　apartment complex was involved in drug trafficking.  By contrast,

10   　　　　introduction of the evidence could have led to a minitrial on the
　　　　subject of Gabriel's drug trafficking and on the subject of the drug

11   　　　　trafficking in, and dangerousness of, the area in general.  There was
　　　　no abuse of discretion in excluding the evidence.

12

13   Answer, Ex. C at 9-10 (emphasis in original).

14   　　　　　The Court of Appeal did not determine the facts or the law in an unreasonable

15   fashion in rejecting this claim of error.  The evidence was only minimally relevant, if at all:

16   petitioner had testified that he took the gun because Lobato told him that drug dealers lived in

17   that apartment and that the neighborhood in general was bad.  RT 421.  That Gabriel in fact dealt

18   drugs would have little relevance to petitioner's state of mind without a showing that petitioner

19   had independent knowledge of the fact.  Moreover, as the Court of Appeal observed, the question

20   was not restricted to Gabriel's activities at the apartment and thus might have produced further

21   inquiries into Gabriel's alleged drug activities.  The state court's exclusion of the marginally

22   /////

23   　　　　　　　　　　　　　　　

24   　　　[3]  Cal. Evid. Code § 352, which provides "The court in its discretion may exclude
evidence if its probative value is substantially outweighed by the probability that its admission
will (a) necessitate undue consumption of time or (b) create substantial danger of undue

25   prejudice, of confusing the issues, or of misleading the jury."

26

1  relevant testimony that might have led to a confusion of the issues did not run afoul of clearly

2  established law.

3      B.  Methamphetamine And Aggression

4          Both Contreras and Cummings had methamphetamine in their systems at six and

5  nine times greater than a therapeutic dose, respectively.  RT 305, 306.  The defense called Albert

6  Globus, a forensic psychiatrist, who qualified as an expert on the effects of methamphetamine.

7  RT 297.  Dr. Globus described the common side effects of even therapeutic doses of

8  methamphetamine as hyperalertness, euphoria, irritability, confusion, assaultiveness or

9  aggression, paranoid delusions, and panic states with homicidal tendencies.  RT 301-302.  A

10 person under the influence of methamphetamine might misinterpret a normal social interaction as

11 a threat.  He noted that "[i]n both the animal and human situation, rate of aggression and social

12 interaction is increased, both physical and verbal."  RT 308.  When Dr. Globus was asked about

13 "studies with monkeys regarding aggression and the use of methamphetamine," the prosecutor's

14 relevance objection was sustained.  RT 304.

15         The Court of Appeal rejected petitioner's claim of error:

16         Assuming that evidence of the monkey studies was relevant, i.e.,
           assuming defendant could establish a link between the monkey
17         studies and the conduct of humans, defendant was not harmed by
           its exclusion.  Dr. Globus was permitted to testify that the level of
18         methamphetamine in Contreras's blood was six times what would
           be expected from a therapeutic dose.  He further testified that side
19         effects of methamphetamine use are restlessness, hyperactivity,
           talkativeness, tenseness, irritability, insomnia, euphoria, confusion,
20         assaultiveness or aggression, delirium, paranoid hallucinations or
           delusions and panic states.  Dr. Globus stated a person using
21         methamphetamine could become excessively angry as a result of a
           given interaction.  Defendant does not explain how evidence
22         regarding studies involving monkeys would have added anything
           further to the foregoing testimony.  Thus, any error in excluding
23         the evidence was harmless under any standard.

24 Answer, Ex. C at 11-12.

25         In Mitchell v. Esparza, 540 U.S. 12, 18 (2003), the Supreme Court held that when

26 a state court finds constitutional error has been committed, but determines that the error was

                                              14

harmless, a federal habeas court may not grant the petition unless the state court "applied

harmless-error review in an 'objectively unreasonable' manner."  The Ninth Circuit has

interpreted this directive in the following manner:

> To grant habeas relief where a state court has determined that a
> constitutional error was harmless, we must both determine (1) that
> the state court's decision was "contrary to" or an "unreasonable
> application" of Supreme Court harmless error precedent, and (2)
> that the petitioner suffered prejudice under *Brecht*[4] from the
> constitutional error.

Inthavong v. Lamarque, 420 F.3d. 1055, 1059 (9th Cir. 2005), cert. denied sub nom. Inthavong v.

Evans, __ U. S. __ , 126 S.Ct. 1660 (2006).

The precedent against which the state Court of Appeal's determination must be

measured is Chapman v. California, 386 U. S. 18, 24 (1967), where the Supreme Court held:

"before a federal constitutional error can be held harmless, the court must be able to declare a

belief that it was harmless beyond a reasonable doubt."  Such a finding is permissible when

excluded evidence is cumulative of other evidence presented to the jury.  See Lange v. Young,

869 F.2d 1008, 1012 (7th Cir. 1989) (any error in excluding physician's testimony that defendant

had previously been diagnosed as paranoid-schizophrenic was harmless where defendant's

medical records were admitted and three other doctors testified as to his present schizo-type

personality disorder).  In this case, the Court of Appeal properly relied on Dr. Globus's

description of the side effects of therapeutic methamphetamine use, which include

assaultiveness, aggressiveness and homicidal panic and his explanation that a person under the

influence of the drug might misinterpret a harmless interaction as a threat, coupled with the

undisputed testimony that Contreras was under the influence of an amount of methamphetamine

six times greater than a therapeutic dose, to determine that the exclusion of cumulative testimony

about the primate studies on methamphetamine and aggression was harmless.

---

[4]   Brecht v. Abrahamson, 507 U.S. 619 (1993).

1       C.  <u>Emilio Lobato's Gang Ties</u>

2       Petitioner testified he got the gun from his friend Emilio Lobato, a gang member,

3   who told him that 683 El Camino was in a bad neighborhood and that if he planned to go, he

4   needed protection.  RT 421-422.  Petitioner called a Sacramento police detective and gang

5   expert, who testified that Lobato was gang affiliated, although not a gang member.  Counsel

6   asked him about Lobato's tattoos; the prosecutor's relevance objection was sustained.  RT 383.

7   Counsel argued he wanted to show Lobato's affiliation with the Lane Street Homies and his

8   access to weapons; this was relevant, he claimed, because "Mr. Lobato is not like your grocery

9   clerk down the street . . . he has access to weapons . . . which would accommodate Mr. Melendez

10  acquiring this thing."  RT 390.  The trial court rejected the attempt, because while petitioner's

11  state of mind "with respect to the circumstances surrounding his acquisition of the weapon may

12  be material or relevant as to his plans for the use of such weapon," Lobato's character was not.

13  RT 391.

14      The Court of Appeal ruled:

15  > [T]here was no dispute defendant obtained the weapon from
16  > Lobato, and we fail to see how Lobato's gang affiliation or gang
    > culture and the use of guns in general has any bearing on whether
    > defendant armed himself for protection only.  Lobato's gang
17  > affiliation could as easily be used to establish that defendant
    > obtained the weapon for offensive purposes.  At any rate, the jury
18  > was already told Lobato had a gun and gang tattoos.  The question
    > of what type of tattoos would not have added anything.

19

20  Answer, Ex. C at 10-11.  The Court of Appeal's determination was not an unreasonable

21  application of Supreme Court precedent, for this evidence was only marginally relevant in light

22  of the fact that there was no dispute as to where and why petitioner obtained the gun.

23  V.  <u>Doyle Error</u>

24      At the hearings on the motions in limine, defense counsel sought to exclude

25  petitioner's brief statement to police, which preceded his invocation of his right to have counsel

26  present during the interview.  RT 1.  The prosecutor told the court he would not present any of

petitioner's statements during his case in chief.  RT 2.  During his cross-examination of petitioner, the prosecutor did not mention either petitioner's earlier statements or his invocation of his Miranda rights.

The prosecutor discussed the conflicting evidence on the question whether petitioner kicked in Cousins's door:

> He does, he has a motive to lie about that.  That would blow in the whole self-defense thing.  If he kicked in that door after forces it open [sic], there is zero self-defense in this case whatsoever.  So that's–he's had two years to think about that, he's had time to think about a good story.

RT 505.  Later, he said that petitioner "has massaged his story . . . to explain how the positions changed, but without his having to put a gun to [Cummings's] head."  RT 590.

The Court of Appeal rejected petitioner's claim of error:

> *Doyle v. Ohio* (1976) 426 U.S. 610 . . . stands for the proposition that, once an arrestee invokes his right to remain silent, the prosecution cannot use that against him to impeach an exculpatory story told for the first time at trial. . . . .
>
> However, in this instance, we can agree with defendant only to the extent he concedes that any possible reference to his postarrest silence was subtle.  So subtle in fact that we fail to see it at all. . . .
>
> Here, the jury was not told defendant failed or refused to make any statements to police.  Nor was the jury informed defendant ever told anyone a different version of the incident.  The jury was told that it has been two years since the killings and defendant had had all that time to come up with a story that was consistent with the facts and yet left open the possibility of self-defense.  As far as the jury was concerned, defendant was never previously asked for his version of what happened.  Inasmuch as this case came down to a credibility contest between defendant and the people present in the apartment, the prosecutor's mention of the two-year gap since the incident was permissible argument.

Answer, Ex. C at 13-14.

/////

/////

/////

17

1       In Doyle, the Supreme Court held:

2           [E]very post-arrest silence is insolubly ambiguous because of what
            the State is required to advise the person arrested.  Moreover, while
3           it is true that the Miranda warnings contain no express assurance
            that silence will carry no penalty, such assurance is implicit to any
4           person who receives the warnings.  In such circumstances, it would
            be fundamentally unfair and a deprivation of due process to allow
5           the arrested person's silence to be used to impeach an explanation
            subsequently offered at trial.

6

7   426 U.S. at 617-18; see also Gravley v. Mills, 87 F.3d 779, 788 (6th Cir. 1996) (prosecutor

8   committed Doyle error "by repeatedly driving home references to Gravley's silence and implying

9   that such silence was evidence that Gravley was lying").  Even though this claim of error may not

10  be as opaque as characterized by the state Court of Appeal, this court cannot find the state

11  appellate court unreasonably applied Doyle.  The prosecutor did not use petitioner's earlier

12  silence to suggest that his exculpatory testimony was untrue; instead, he commented on

13  petitioner's credibility as a witness by alluding to petitioner's opportunity to perfect his account.

14  As the Supreme Court noted in Portuondo v. Agard, 529 U.S. 61, 68 (2000):

15          Allowing comment upon the fact that a defendant's presence in the
            courtroom provides him a unique opportunity to tailor his
16          testimony is appropriate . . . to the central function of the trial,
            which is to discover the truth.

17

18  The prosecutor's comment in this case was more like that in Portuodno than in Doyle; there was

19  no error.

20  VI.  New Counsel For A New Trial Motion

21          At a hearing after the return of the verdict, defense counsel told the court that

22  petitioner wanted to file a motion for a new trial alleging ineffective assistance of counsel and

23  asked that new counsel be appointed for petitioner to pursue the motion.  RT 653-654.  In

24  chambers, petitioner told the judge that counsel did not represent him adequately because he did

25  not call a few witnesses and did not make some necessary points during closing argument.  RT

26  655.  The court asked him to identify the witnesses, with the following response:

18

> Well, one witness would have testified to – Another one was a good character witness, outside of my family.  This was a counselor; he would have testified to my good grades, my good nature. . . .
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> There were more witnesses with inconsistencies of – Against me.  And we needed to prove, to show more inconsistencies . . . [o]f all the witnesses against me.  There were Ms. Cousins, Mr. Perez, and her son, Anthony– All of them, they had – And there was more that we needed to bring out.

RT 656.  Counsel explained that there were other people in the apartment at the time of the shooting, who "could have probably testified as to some inconsistencies, but they also could have testified to a lot of consistent statements that were made by the People's witnesses."  RT 656.  Counsel decided not to call these witnesses because "it would hurt the case more than help it."  RT 657-658.  Counsel conceded that he had had difficulties reaching some of these witnesses, but said when he was able to talk to them, they did not provide anything helpful.[5]  RT 657.  The court said that defense counsel had done an "excellent job" in trial and that he could not grant the motion to appoint new counsel unless there was "something specific to indicate that . . .there is any conflict in his [trial counsel's] continuing to represent you."  RT 659.  Without that, "I just don't think sufficient grounds have been shown."  RT 659.

> The Court of Appeal rejected petitioner's claim of error:
>
> In *People v. Smith* (1993) 6 Cal.4th 684, the state high court held that the standard for determining whether new counsel should be appointed to pursue a new trial motion based on a claim of ineffective assistance is no different than the standard for appointing new counsel at any stage during the proceedings, i.e., the *Marsden* standard. (*Id.* at p. 696; see *People v. Marsden* (1970) 2 Cal.3d 118.) Under that standard, substitution is permitted, in the court's discretion, only if "the court finds that the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel [citation], or,

---

[5]  Counsel said that Lisa Diaz, who had been in the bedroom when petitioner came into the apartment, reported that petitioner kicked the door in and asked about Gabriel.  She said, however, that she was "unclear as to who shot first."  RT 658.

1    stated slightly differently, if the record shows that the first
     appointed attorney is not providing adequate representation or that
2    the defendant and the attorney have become embroiled in such an
     irreconcilable conflict that ineffective representation is likely to
3    result." (*People v. Smith, supra*, 6 Cal.4th at p. 696.)

4    The trial court determined counsel's trial performance was
     adequate.  Our review of the record supports this conclusion.
5    Defendant's showing established nothing more than a difference of
     opinion as to whether certain witnesses should have been called.
6    Defense counsel made a tactical decision against it, because the
     testimony of those witnesses would have been more detrimental
7    than beneficial. Counsel acknowledged that reasonable minds may
     differ on this conclusion. However, the fact reasonable minds may
8    differ does not establish ineffective assistance, which requires
     representation below an objective standard of reasonableness under
9    prevailing professional norms. (*In re Avena* (1996) 12 Cal.4th 694,
     721.) Defendant made no showing that he was not receiving
10   adequate legal assistance or that an irreconcilable conflict had
     arisen. Under the circumstances presented, the trial court did not
11   abuse its discretion in denying defendant's request.

12   Answer, Ex. C at 16-17.

13         A criminal defendant has the right to the assistance of counsel at any "critical

14   stage" of the proceedings.  United States v. Wade, 388 U.S. 218, 224 (1967).  In California, the

15   hearing on a motion for new trial is a critical stage to which the right to counsel extends.

16   Menefield v. Borg, 881 F.2d 696, 699 (9th Cir. 1989).  "[T]he [Sixth Amendment] right to

17   counsel is the right to effective assistance of counsel," McMann v. Richardson, 397 U.S. 759,

18   771 n.14 (1970), so "[a] state prisoner has a right to competent counsel in presenting a new trial

19   motion." Jackson v. Ylst, 921 F.2d 882, 888 (9th Cir. 1990).  Nevertheless,

20         there is no automatic right to a substitution of counsel simply
           because the defendant informs the trial court that he is dissatisfied
21         with appointed counsel's performance.

22         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

23         A trial judge is required to order a substitution of counsel if, after a
           hearing, it is demonstrated that there is a breakdown in the
24         attorney-client relationship or that an actual conflict of interest
           existed.

25

26   Id. (quotations omitted).

                                        20

1    Petitioner does not take issue with the adequacy of the hearing on his request to

2 substitute counsel, but rather argues that the state court erred in refusing to appoint a new lawyer.

3 Petitioner's dissatisfaction with trial counsel centered on counsel's strategic determination not to

4 call as witnesses the other people in Cousins's apartment, based on counsel's determination that

5 while some of their testimony would be inconsistent with Cousins's and Presz's accounts, more

6 of their testimony would support those accounts, particularly on the crucial fact of whether

7 petitioner had kicked open the door of the apartment.  RT 657-658.  This disagreement over

8 tactics does not signal the sort of breakdown requiring the appointment of different counsel.

9 United States v. Porter, 405 F.3d 1136, 1140 (10th Cir.), cert. denied, __ U.S. __, 126 S.Ct. 550

10 (2005) ("good cause for substitution of counsel consists of more than a mere strategic

11 disagreement between a defendant and his attorney . . . ."); see Yarbrough v. Gentry, 540 U.S. 1,

12 6 (2003) (there is a "broad range of legitimate defense strategy" during argument; not ineffective

13 assistance when counsel failed to highlight all the potentially exculpatory evidence); Davis v.

14 Woodford, 384 F.3d 628, 650 (9th Cir. 2004), cert. dismissed. sub nom. Davis v. Brown, __ U.S.

15 __, 126 S.Ct. 410 (2005) (counsel not ineffective for failing to call "negative" witnesses).  The

16 Court of Appeal's decision is neither contrary to nor an unreasonable application of these

17 principles.

18    Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

19 writ of habeas corpus be denied.

20    These findings and recommendations are submitted to the United States District

21 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

22 days after being served with these findings and recommendations, any party may file written

23 objections with the court and serve a copy on all parties.  Such a document should be captioned

24 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

25 /////

26 /////

shall be served and filed within ten days after service of the objections.  The parties are advised

that failure to file objections within the specified time may waive the right to appeal the District

Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 29, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

2/mele1593.157